# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JUSTIN D. ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-00947 |
| ) | Judge Trauger/Brown |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**To: The Honorable Aleta A. Trauger, United States District Judge.**

## REPORT AND RECOMMENDATION

This action was brought under 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of the final decision of the Social Security Administration (SSA) through its Commissioner, denying plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 416(I) and 423(d), and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. For the reasons explained below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 18) be **DENIED**, and the Commissioner's decision **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB on November 16, 2011,[1] and SSI on November 16, 2012, initially alleging a disability onset date of October 15, 2008 in both instances. Plaintiff claimed he was unable to work due to bipolar disorder, anxiety, and personality disorder. (Doc. 16, p. 132) Plaintiff's applications for benefits were denied initially on February 15, 2012, and upon

---

[1] The procedural history that follows is adopted from the jurisdiction and procedural history section of the Administrative Law Judge's (ALJ) decision (Doc. 16, p. 10), unless indicated otherwise.

reconsideration on April 12, 2012.

Plaintiff requested a hearing before an ALJ on April 24, 2012. On September 9, 2013, plaintiff amended his disability onset date to August 1, 2011. (Doc. 16, p. 100) Thereafter, a hearing was held in Nashville on October 15, 2013 before ALJ Shannon Smith. Plaintiff was represented at the hearing by Carl Groves, a non-attorney representative. Vocational expert (VE) Kenneth Anchor testified at the hearing.

The ALJ entered an unfavorable decision on December 27, 2013 (Doc. 16, pp. 7-23), after which plaintiff filed a request with the Appeals Council on February 26, 2014 to review the ALJ's decision (Doc. 16, p. 6). The Appeals Council denied plaintiff's request on June 25, 2015 (Doc. 16, pp. 1-5), whereupon the ALJ's decision became the final decision of the Commissioner.

Plaintiff brought this action through counsel on August 31, 2015 (Doc. 1), following which he filed a motion for judgment on the administrative record on January 21, 2016 (Doc. 18). The Commissioner responded on February 17, 2016. (Doc. 20) Plaintiff did not reply. This matter is now properly before the court.

## II. EVIDENCE[2]

### A. Medical Evidence

Ms. Amber Webb, B.S., was plaintiff's Volunteer Behavioral Health Care System case manager. The record shows that Ms. Webb saw plaintiff fifty-seven times between August 2011 and August 2013. (Doc. 16, pp. 219-246, 329-35, 391-402, 415-56, 481-500, 518-29, 546-59) The record shows that Ms. Webb met with plaintiff at his home 52 times during this period, and in her office on five occasions (Doc. 16, pp. 427-28, 443-44, 451-52, 495-96). The record shows that, on

---

[2] The excerpts of the administrative record below are those necessary to respond to plaintiff's motion for judgment on the administrative record. The remainder of the record is incorporated herein by reference.

each and every occasion, Ms. Webb recorded plaintiff's subjective representations of events alleged to have occurred between her visits, but that she made no diagnoses, nor did she provide/recommend any treatment or therapy. On the other hand, the "sessions content" sections of these reports show that plaintiff discussed his various disability applications and appeals with Ms. Webb on thirty-five occasions (Doc. 16, pp. 245, 393, 395, 397, 399, 401, 417, 419, 421, 423, 425, 427, 429, 431, 434, 438, 442, 443, 446, 449, 452, 481, 483, 485, 487, 489, 492-95, 519, 521, 525, 549, 557-58), and on thirteen of those occasions, Ms. Webb actually helped plaintiff complete his disability/benefits paperwork (Doc. 16, pp. 239, 241, 243, 393, 397, 399, 401, 415, 421, 449, 481, 483, 485). Plaintiff also told Ms. Webb repeatedly that he spent his days on the computer chatting with friends/acquaintances and playing computer games (Doc. 16, pp. 221, 223, 225, 227, 231, 233, 235, 237, 243, 391, 393, 395, 397, 419, 421, 423, 425, 429, 431, 440, 442, 444, 446, 448-49, 451, 484, 491, 520, 522, 524, 526).

Ms. Webb completed a document on January 10, 2013 captioned, "Medical Statement Concerning Psychological Impairments for Social Security Disability." (Doc. 16, pp. 412-14) Ms. Webb opined that plaintiff exhibited the following *general* limitations: 1) marked restrictions in activities of daily living; 2) extreme limitations in social functioning. (Doc. 16, p. 413) Ms. Webb opined further that the following additional limitations were "[p]resent": 3) deficiencies in concentration, persistence and pace resulting in frequent failure to complete tasks in a timely manner; 4) repeated episodes of deterioration or decompensation in work or work-like settings; 5) complete inability to function independently outside the area of the home due to panic attacks. (Doc. 16, p. 413)

Ms. Webb assessed plaintiff as moderately impaired in the work setting in his ability to: 1) understand and remember short and simple instructions; 2) carry out very short and simple

3

instructions; 3) sustain an ordinary work routine without special supervision; 4) make simple work related decisions; 5) ask simple questions or request assistance; 6) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; 7) be aware of normal hazards and to take appropriate precautions. (Doc. 16, pp. 413-14) She also assessed plaintiff as markedly impaired in his ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) interact appropriately with the general public; 4) accept instructions and respond appropriately to criticism from supervisors; 5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; 6) respond appropriately to changes in the work setting; 7) set realistic goals or make plans independently of others. (Doc. 16, pp. 413-14) Finally, Ms. Webb assessed plaintiff as extremely impaired in his ability to: 1) maintain attention and concentration for extended periods; 2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 3) work in coordination with and proximity with others without being distracted by them; 4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Doc. 16, pp. 413-14)

## B. Transcript of the Hearing

The ALJ's first hypothetical to the VE is quoted below in its entirety, as is the VE's response to the ALJ's hypothetical:

> Q      For purposes of our hypotheticals today, I'd like you to assume an individual with the same age, education, and past work that you've previously described for the claimant. In our first hypothetical we would have an individual with no exertional limitations. This individual would be able to understand, remember, and carry out simple and lower level detailed instructions, would be able to maintain attention and concentration for those tasks with normal breaks spread throughout the day. This individual should not interact with the public, but can interact appropriately with supervisors and co-workers, however would work better with things rather than

4

>       people. This individual can adapt to occasional changes in the
>       workplace and job duties. With those limitations in mind, would the
>       individual be able to perform any of the claimant's past work?
>
> A     Your Honor, past work as a factory worker and deliver[y] driver as
>       performed would be available   The job as a computer repair worker
>       would not.

(Doc. 16, pp. 49-50)

## III. ANALYSIS

### A. The ALJ's Notice of Decision

Under the Act, a claimant is entitled to disability benefits if he can show his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905. Corresponding regulations outline the five-step sequential process to determine whether an individual is "disabled" within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374-75 (6th Cir. 2014). While the claimant bears the burden of proof at steps one through four, the burden shifts to the Commissioner at step five to identify a significant number of jobs in the economy that accommodate the claimant's RFC and vocational profile. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

The ALJ rendered the following RFC determination in reaching his ultimate decision that plaintiff was capable of performing past relevant work as a delivery truck driver:

> . . . . [T]he claimant has the residual functional capacity to perform
> a full range of work at all exertional levels but with the following non
> exertional limitations: the claimant can understand, remember and
> carry out simple and lower level detailed instructions. He can
> maintain attention and concentration for such tasks with normal
> breaks spread throughout the day. He can interact appropriately with
> supervisors and coworkers but should not interact with the general

>     public. He may work better with things rather than people, and he
>     can adapt to occasional changes in the workplace and job duties.

(Doc. 16, pp. 14, 18)(bold omitted)

### B. Standard of Review

The district court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record, and whether the decision was made pursuant to proper legal standards. 42 U.S.C. § 405(g); *Gayheart*, 710 F.3d at 374. Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2003). The Commissioner's decision must stand if substantial evidence supports the conclusion reached, even if the evidence in the record also supports a different conclusion. *Gayheart*, 710 F.3d at 374.

### C. Claim of Error

#### 1. Whether the ALJ Erred in Not Including His Step Three Analysis of Plaintiff's Concentration, Persistence, and Pace in His RFC Analysis
#### (Doc. 19, pp. 10-11)

Plaintiff makes two arguments in support of his first claim of error. First, he argues that the ALJ "erred when he failed to capture his own concentration, persistence and pace finding [at step three] into his RFC." More particularly, plaintiff maintains that the ALJ determined at step three that plaintiff "had a moderate limitations in his ability to maintain concentration, persistence and pace," but that the ALJ's determination in his RFC analysis that plaintiff "'could' maintain concentration persistence and pace for simple routine jobs . . . [wa]s tantamount to a finding that [he] has no concentration persistence or pace deficits at all . . . ." Citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), plaintiff's second argument is that the ALJ erred because, under *Ealy*,

"an RFC for simple routine tasks is not sufficient to fully convey the speed and pace-based restrictions indicated by even a claimant's moderate limitations in concentration, persistence, and pace." Although plaintiff does not say so specifically, he appears to argue that the ALJ's RFC assessment was based on a vague characterization of plaintiff's concentration, persistence, and pace limitations presented to the VE.

SSR 96-8p provides the following relevant to plaintiff's argument that the ALJ should have incorporated his findings at step three into his RFC analysis:

> The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing Impairments .
> . . .

SSR 96-8p, 1996 WL 374184 at *4 (SSA July 2, 1996). Although the Sixth Circuit has not decided the issue of whether an ALJ is required base his RFC assessment on his step three determinations, two sister circuits have determined that the ALJ is not required to do so. *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015)(affirming the judgment of the district court where appellant argued that the ALJ did not include his step three determination that Vigil had "moderate . . . . limitation of concentration, persistence and pace" in his RFC assessment); *Israel v. Astrue*, 494 Fed.Appx. 794, 796 (9th Cir. 2012)(affirming the judgment of the district court where the ALJ did not "include his own step-3 finding that [the appellant] has 'moderate difficulties' in 'concentration, persistence, or pace' in his residual functional capacity . . . finding . . . ."). In addition to the persuasive authority provided by *Vigil* nor *Israel*, several districts in the Sixth Circuit – including the Middle District of Tennessee – have reached the same conclusion. *See Hycoop v. Comm'r of Soc. Sec.*, 2016 WL

4500794 *4 (W.D. Mich.); *Cala v. Colvin*, 2016 WL 270303 *17 (M.D. Tenn.); *Koster v. Colvin*, 2015 WL 413795 *13 (N.D. Ohio). Each of the five foregoing cases were decided based on the courts' interpretations of SSR 96-8p. Based on the rulings in these cases, and absent any cases to the contrary, the ALJ did not err by not incorporating his concentration, persistence, and pace conclusions at step three into his RFC assessment.

As for his second argument, plaintiff's reliance on *Ealy* is misplaced. *Ealy* stands for the proposition that, "[i]n order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental limitations." *Ealy*, 504 F.3d at 516. As shown above at pp. 4-5, the ALJ's first hypothetical to the VE – and on which the former's RFC assessment was based – included the following non-exertional consideration: "This individual . . . would be able to maintain attention and concentration for those tasks with normal breaks spread throughout the day." As shown above at p. 5, the ALJ's RFC assessment included the following non-exertional limitation: ". . . . the claimant can . . . maintain attention and concentration for such tasks with normal breaks spread throughout the day." A side-by-side comparison of the two statements shows that the two are virtually identical. In short, the hypothetical posed by the ALJ to the VE accurately portrayed plaintiff's mental limitations set forth in the ALJ's RFC assessment. Consequently, *Ealy* is inapposite to the facts of this case.

Plaintiff's first claim of error is without merit.

### 2. Whether the ALJ Erred in Not Giving "Good Reasons" For Rejecting Ms. Amber Webb's Opinion
### (Doc. 19, pp. 11-13)

Plaintiff makes the following two arguments in support of his second claim of error. First, the ALJ failed to give "'good reasons . . . for the weight given to the treating source's medical

opinion,'" the "'good reasons' analysis ha[ving] been adopted explicitly in the Sixth Circuit . . . ." Second, the ALJ erred in his determination that Ms. Webb "ha[d] not been involved in extensive individual therapy with the claimant,'" which he claims is "directly contradicted by the record."

Turning to plaintiff's first argument, the regulations provide that an ALJ is "procedurally required to 'give good reasons . . . for the weight [he gives to a] treating source's opinion.'" *Ealy*, 594 F.3d at 514 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). However, this "good reason" requirement only applies to treating sources. *See Ealy*, 594 F.3d at 514-15 (citing *Smith*, 482 F.3d at 877). Treating sources are those medical professionals identified in 20 C.F.R. § 404.1513(a) as "acceptable medical sources," *i.e.*, licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. There is nothing in the record to support the conclusion that Ms. Webb, who is identified throughout the record as a "case manager" with a BS degree, is an "acceptable medical source." *See Payne v. Comm'r of Soc. Sec.*, 402 Fed.Appx. 109, 119 (6th Cir. 2010)(case managers are not acceptable medical sources). Consequently, the ALJ was not required to give "good reasons" for the weight he gave to her opinion.

The next question is, if Ms. Webb is not an "acceptable medical source," then what is she? A plain reading of 20 C.F.R. § 404.1513(d) reveals that Ms. Webb falls into the category of "other sources." More particularly, Ms. Webb falls into one of the sub-categories covering counselors, early intervention team members, public or private social welfare agency personnel, etc. 20 C.F.R. § 404.1513(d)(2)-(3). Having established that Ms. Webb is an "other source," the law is well established that the opinion of an "other source" is not entitled to any special deference. *See Hill v. Comm'r of Soc. Sec.*, 560 Fed.Appx. 547, 550 (6th Cir. 2014). SSR 06–3p simply provides that "the adjudicator generally should explain the weight given to opinions from these 'other sources,'

9

or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . . ." SSR 06-3p (SSA), 2006 WL 2329939 at * 6 (Aug. 9, 2006).

The ALJ wrote the following with respect to the medical source statement completed by Ms. Webb:

> One of the claimant's case managers has provided an opinion of the claimant's ability to work. The opinion has been considered and accorded very little weight due [to] a number of reasons. The mental medical source statement was completed by Amber Webb, a Case manager with Volunteer Behavioral Health (Exhibit 6-F, pg. 2-4). However, this practitioner is not an 'acceptable medical source' within the meaning of 20 CFR 404.1513(a) and 416.913(a). Under 20 CFR 404.1527(a)(2) and 416.927(a)(2), only 'acceptable medical sources' can provide medical opinions, and only persons in this group can be considered as 'treating sources.' Even so, under Social Security Ruling 06-03p, the statement(s) of this practitioner must nevertheless be considered. Under SSR 06-03p, the weight that is to be provided to such a statement is fact intensive, and includes such considerations as the length or duration of the relationship as between the source and the claimant; the consistency of the statement with the other evidence of record; the degree to which the source presents relevant evidence to support the opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the claimant's impairment(s); and, any other factors that tend to support or refute the opinion. Thus the fact that Ms. Webb is not an acceptable medical source (she is a case manager with a B.S. degree per her signature) and has not been involved in extensive individual therapy with the claimant, her opinion is not entitled to more than very little weight.

(Doc. 16, p. 17) The ALJ's explanation above of the weight he gave Ms. Webb's opinion complies with the requirements of SSR 06-03p. The next question is whether the ALJ's decision to accord Ms. Webb's opinion little weight because she had "not been involved in extensive individual therapy with the claimant" is supported by the evidence.

As previously noted above at pp. 2-3, Ms. Webb met with plaintiff fifty-seven times between

August 2011 and August 2013. A plain reading of each and every "[s]ession content" sections in those fifty-seven reports reveals that Ms. Webb merely recorded plaintiff's subjective complaints. As an initial point, the law is settled that the ALJ is not required to accept opinions based solely on a claimant's self-reported symptoms. *See e.g, Griffith v. Comm'r of Soc. Sec.*, 582 Fed.Appx. 555, 564 (6th Cir. 2014)(citing 20 C.F.R. § 416.927(b); *Bell v. Barnhart*, 148 Fed.Appx. 277, 285 (6th Cir. 2005)(declining to give weight to a doctor's pinion that was only supported by the claimant's reported symptoms). That said, there also is not a single entry in any of those fifty-seven reports from which it can be inferred that Ms. Webb reported her own observations rather than plaintiff's subjective representations, rendered any diagnosis, provided any treatment, or recommended any therapy. In short, the record shows that Ms. Webb was someone with whom plaintiff commiserated, not someone who was involved in his actual care. Consequently, the ALJ's reasoning for according Ms. Webb's opinion very little weight is supported by the record.

Plaintiff's second claim of error is without merit.

## IV. CONCLUSION
## AND
## RECOMMENDATION

For the reasons explained below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 18) be **DENIED**, and the Commissioner's decision **AFFIRMED**. The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this 17th day of November, 2016.

/s/ Joe B. Brown
United States Magistrate Judge